## SOBRINOS DE EZQUIAGA *v.* MUNÍTIZ.

### APPEAL from the District Court of Guayama.

No. 75.—Decided June 26, 1906.

APPEAL—EVIDENCE—BILL OF EXCEPTIONS—STATEMENT OF FACTS.—The Supreme Court will not consider on appeal the evidence taken at the trial unless the same is set forth in a bill of exceptions or statement of facts.

ID.—FACTS ALLEGED—QUESTIONS OF LAW.—Where the facts alleged in a complaint and answer are identical, and the parties agree thereto, but differ only as to the construction to be given thereto, a question of law is raised, and the appellate court may consider the same without the necessity of a bill of exceptions or statement of facts.

CONTRACTS OF PARTNERSHIP AND PARTICIPATION—REQUIREMENTS—SPECIAL PARTNER—MANAGING PARTNER.—It is a necessary requisite for the existence of a contract of partnership on joint account, that the capital of the special partner shall be subject to the results, whether profitable or unprofitable, of the business, and the managing partner is not obliged to return the same until the expiration of the term for which the partnership is created, and then only after a liquidation of the business.

ID.—CONTRACTS OF COMMERCIAL LOAN.—The plaintiff having contracted to give the defendant credit by agreeing to honor all his orders, whether for merchandise or money, up to a fixed amount, and the defendant bound himself to make partial payments at such times as might be convenient, and the plaintiff was to receive a certain profit of the business in lieu of interest on the advances, but reserved to itself the right to terminate the contract upon six months' notice; *It was held:* That plaintiff did not enter into a contract of partnership with the defendant.

The facts are stated in the opinion.

*Messrs. Acuña and Méndez* for plaintiff.

*Mr. López Landrón* for defendant.

MR. CHIEF JUSTICE QUIÑONES delivered the opinion of the court.

On November 30, 1893, by public deed executed in this city, before Juan Ramón de Torres, a notary of the same, the special copartnership doing business in this city under the firm name of Sobrinos de Ezquiaga, and Modesto Munítiz y Aguirre, a resident of Cayey, engaged in commercial pursuits in said town, entered into a contract in which, after stating as facts that the firm of Sobrinos de Ezquiaga was the owner

of two frame houses situated in the *barrio* of Monte Llano, in the section called Palo Seco, in the municipal district of Cayey, one of which houses contained a steam engine with its motor for the preparation of coffee and the necessary polishing wheel; that by agreement with Modesto Munítiz, the firm of Sobrinos de Ezquiaga had turned both estates over to him in order that he might make use thereof in conjunction with a store belonging to him which he had established therein, under the condition of maintaining them in the best possible state and without permitting them to deteriorate; and that Sobrinos de Ezquiaga having agreed to open a credit account in favor of Munítiz up to the sum of 25,000 *pesos,* to provide for the maintenance of his store or commercial establishment, they entered into such agreement under the following clauses and stipulations:

1. The firm of Sobrinos de Ezquiaga opens at once a credit account not to exceed the sum of 25,000 *pesos,* commercial currency, in favor of Modesto Munítiz y Aguirre, which sum it will deliver to him in cash upon his order and demand, and in provisions and dry goods as required by him in his business, to be charged to him by the firm of Sobrinos de Ezquiaga in the account current opened in his name for the purpose.

2. That Munítiz likewise agreed to pay on account partial sums in the form most convenient to him for the purpose of liquidating his indebtedness, and at such times as he might be able so to do; and that so long as he should make such payments the firm would continue to make such deliveries to him as he might need for his establishment, so that he could always have a stock on hand.

3. No term was fixed for the duration of this contract, but the firm of Sobrinos de Ezquiaga, when it should consider it best for its interests, would give six months advance notice to Munítiz for the full settlement of the balance in its favor under the account-current, which balance Munítiz would be

required to pay for the purpose of liquidating his entire indebtedness.

4. In the event that it should become necessary for Munítiz to absent himself, or if he should fall ill or die, or not be able to continue at the head of his business, or in the event of any accident rendering it impossible for him to do so, then Sobrinos de Ezquiaga would be empowered and authorized to take charge of the commercial establishment of Munítiz and continue the business if they should see fit, or liquidate it, or do what they might deem most advantageous to their interests and those of Mr. Munítiz.

. 5. It was agreed that the profits obtained in this business and establishment by Mr. Munítiz should be divided in the following manner: Fifty per cent to him and the other 50 per cent to the firm of Sobrinos de Ezquiaga, in compensation for the benefits which Munítiz received, without paying any interest on the credit which said firm opened for him, and for the usufruct of the two estates which the firm granted him.

6. Whenever Munítiz should balance the books of his business he was to advise the firm in order that such balance might be made with its knowledge and intervention; and that the firm should have such intervention in everything that might be deemed advisable with reference to such balance and division of the profits obtained.

They entered into this contract under these bases and stipulations, binding themselves to observe, fulfill and execute it absolutely in accordance with the literal context thereof without any interpretation or tergiversation whatsoever, the party violating the same to pay the costs, expense, loss and damage caused thereby to the other party.

Before signing, both contracting parties stated that they had likewise agreed that if Mr. Munítiz should require more credit than the 25,000 *pesos* mentioned in the first clause, and Sobrinos de Ezquiaga had no objection to extending it to him, they could do so, provided both contracting parties agreed thereto; in such case the excess was to be charged in

the account current referred to at the end of said first clause and it was to be considered as having been granted under the same stipulations and guarantees set forth in the deed with regard to the 25,000 *pesos* of the credit referred to and payable in the same form and under the terms stipulated.

Subsequently—that is to say, on May 7, 1904—the firm of Sobrinos de Ezquiaga, as the liquidator of the former firm of the same name, and represented by their counsel, Attorney Eduardo Acuña y Aybar, filed the complaint, the subject of this litigation, in the former District Court of San Juan, against Modesto Munítiz y Aguirre, in which, after setting forth in detail the stipulations of the contract above mentioned, it further stated: That in compliance with the stipulations of said contract Sobrinos de Ezquiaga had during the 13 years which had elapsed since the date thereof been honoring the drafts and orders of payment issued by Munítiz as well as the cost of the merchandise ordered by the latter, charging these sums upon the account current opened in the name of Munítiz, although the total amount thereof had exceeded by far the limit of 25,000 Mexican *pesos* fixed as to the credit referred to; and in his turn Munítiz had made payments in cash, merchandise and estates to the plaintiff firm, which had been duly credited on said account current; that the plaintiff firm, in view of the relation it bore to the object and tendency of this complaint, desired to show that the balance of said account current—that is to say, the difference between the items of debit and credit of said account— amounted, on the date of the complaint, to the sum of $80,199.40, which sum Munítiz owed as shown by the copy of the account current submitted by him, the letter transmitting it of May 1, 1904, the statement of corrections by the plaintiff firm and the letter of Munítiz of the 5th of said month of May accepting such corrections, which documents are attached to the complaint, marked Nos. 2, 3, 4, and 5; that Munítiz complied with his obligation of communicating to Sobrinos de Ezquiaga the result of his business, rendering

to them an account of the balances which he made periodically during the years between the date of the contract until 1899, but that since the latter year, which is the date of the last balance, a copy of which had been submitted, Munítiz had maintained an unjustifiable silence and had not told the plaintiff firm anything as to the favorable or unfavorable progress of his business, thus depriving it of the exercise of the right granted the firm under the sixth clause of the contract; that it was to be noted with reference to the balances made by Munítiz of which Sobrinos de Ezquiaga had knowledge—that is to say, those made up to 1899, and communicated to the latter—that said balances showed considerable loss which neither did credit to the business ability of the manager of such business, nor warranted the unlimited confidence which the firm had placed in him by entrusting such large interests to him; and if to this be added that Munítiz having conveyed to Sobrinos de Ezquiaga on October 5, 1902, by public deed, the property and full ownership of a rural estate situated in the jurisdiction of Cayey, with the dam and piping installed thereon for supplying water to the barracks in said town, by subsequent deed of December 30, 1903, Munítiz sold the same property, which no longer belonged to him, to the United States, the court will understand how suspicious such conduct was and the necessity felt by the plaintiff firm of putting an end to a state of affairs highly prejudicial to its large interests; that the firm of Sobrinos de Ezquiaga which, with Munítiz, entered into the contract described in the complaint, was constituted by instrument of January 13, 1887, executed before Notary Juan Ramón de Torres, and was dissolved upon the expiration of the term for which it was established on December 31, 1893, another company under the same firm name being established by instrument of January 26, 1894, executed before José Agustín de la Torre, to which firm were conveyed the assets and liabilities of its predecessor in order that it might act as the successor and liquidator of the latter, and the second firm having been dissolved for the

same reason that the former firm was, on December 31, 1901, by instrument of the second day of the following month of January, executed before Notary Santiago R. Palmer, the plaintiff firm of Sobrinos de Ezquiaga was constituted, and took charge of the liquidation of its predecessor with full and absolute power; and that the plaintiff firm having been unable, notwithstanding its private efforts, to secure from Munítiz the return of the estates received from the plaintiff firm or the rendition of accounts and delivery of the profits upon the loan made him under the terms which he accepted by deed of November 30, 1893, they had been compelled to seek the enforcement of such stipulations through judicial channels; for which reason, after setting forth the juridical principles and precepts which they considered applicable to their rights, they concluded with a prayer to the court that in due time it adjudge the defendant, Modesto Munítiz de Aguirre, to return to the firm of Sobrinos de Ezquiaga the two estates, with the machinery and appurtenances thereof, delivered to him under deed of November 30, 1893, and therein described; that he render an account duly justified of the profits of his commercial business since 1899, and that he pay the plaintiff firm one-half of such profits, and further indemnify it for the loss and damage he may have caused it, in the sum which the court may determine.

The defendant, Modesto Munítiz, demurred to the complaint on the ground of a misjoinder of causes of action therein, that the complaint did not state facts sufficient to constitute a cause of action, and that the language was uncertain and ambiguous; to which demurrer the plaintiff made a lengthy answer, the decision thereon not appearing upon the record.

Modesto Munítiz, the defendant, through his counsel, Luis Muñoz Morales, then made answer to the complaint contesting it in every respect, and making a general denial of all the facts and grounds alleged in said complaint; but inserting

almost literally the contents of the contract entered into be-
tween the plaintiff firm and said Modesto Munítiz, the de-
fendant, on November 30, 1893, as set forth in the complaint;
and summarizing all the grounds of his opposition thereto in
the following terms:

"1. That the commercial firm of Sobrinos de Ezquiaga, constituted
in 1902, now the plaintiff, is not the legal successor of the firm of the
same name constituted in 1887, which acquired the estates and entered
into the contract with the defendant.

"2. That the contract of usufruct of the two houses is subject,
with regard to its duration, to the liquidation and extinction of a
commercial firm.

"3. That the contract of November 30, 1893, constitutes a real
joint-account partnership, and that it is the duty of Munítiz, the de-
fendant, as managing partner, to put into liquidation the partnership
which he manages.

"4. That until such liquidation is made no account of the result
thereof can be rendered; and until such account is rendered it is not
possible to ascertain whether there has been any loss or profit; and
until this is known it is not possible to claim in advance profits capri-
ciously supposed by the plaintiff to exist.

"5. That if such liquidation should show losses each of the part-
ners in this joint-account partnership must defray his share.

"6. That the defendant having complied with the obligations im-
posed upon him by the contract, he cannot be required to perform
what was not agreed to, and a claim for alleged loss and damage is
absolutely groundless."

And he concluded praying the court to dismiss the com-
plaint in every respect, with the costs against the plaintiff
firm.

The trial having been held at which were taken the docu-
mentary evidence and the testimony of the witnesses pre-
sented by both sides and the arguments of their respective
counsel, having been heard, the District Court of Guayama
delivered the following judgment:

"*No. 86.—Sobrinos de Ezquiaga* v. *Modesto Munítiz.* Rendition
of accounts and payment of balance resulting therefrom. This cause

was called for trial on April 29, 1905, and the plaintiff and defendant appeared through their counsel, both parties announcing that they were prepared to proceed. Counsel for the defendant made a motion to the court for a number of amendments to the answer to the complaint, which amendments the plaintiff accepted, and the court, in view thereof, granted the petition of the defendant. The court, after having heard the complaint, the answer thereto, the documentary evidence, and the testimony of the witnesses introduced by both parties, and the arguments of counsel, reserved judgment. On this 6th day of June, 1905, the court holds that the law and the facts are in favor of the plaintiff, and therefore orders that the latter recover from the defendant the estates with the machinery and appurtenances remaining, described in their complaint, the defendant being warned that if, within a period of 10 days from service of notice of the judgment he shall fail to vacate said premises in favor of the plaintiff, he will be ejected therefrom; and if the defendant shall fail to vacate said estates in favor of the plaintiff within the period fixed in this judgment, it is ordered that a writ of ejectment issue to the marshal in order that he may in due form eject the defendant therefrom, the costs being taxed against the latter; and it is ordered that execution issue against the property of the defendant for the satisfaction of this judgment. And with respect to the prayer of the plaintiff, that an account, duly justified, be rendered of the profits which the defendant may have realized in his commercial establishment since the year 1899, and that he pay the plaintiff one-half of such profits, and in addition, indemnify the plaintiff for loss and damages, the court holds that the law and the facts are against the plaintiff and therefore dismisses these claims. Done, pronounced, and published in open court June 6, 1905.—Charles E. Foote, judge of the district court. Attest: Franco. Morales, secretary of the court.

"Entered this 6th day of June, 1905.—Morales, secretary."

From this judgment both parties took an appeal as to the points adverse to them, respectively, and the transcript of the record prescribed having been transmitted to this Supreme Court and the briefs of both parties having been filed, a day was set for the hearing which was had with the attendance of counsel, who made their respective arguments.

Among the different questions involved in this appeal the first one to be considered by this court is that relating to the

capacity of the plaintiff firm of Sobrinos de Ezquiaga, as the liquidator of the former firm doing business under the same style and name, to exercise the actions and rights arising from the agreement entered into by said firm and Modesto Munítiz by the public deed of November 30, 1893, which was the first point objected to by the defendant, Modesto Munítiz, in the lower court, and afterwards renewed on appeal.

Upon this point of the capacity of the plaintiff firm, considerable evidence from both sides was taken, said evidence in the district court consisting, as has been said, of public documents and the testimony of witnesses; but as such evidence has not been presented in this second instance in the form prescribed by section 214 of the new Code of Civil Procedure; that is to say, by means of a bill of exceptions or statement of facts, approved by the judge of the district court, after a hearing and the participation of the adverse party, but by means of a certificate of the reporter of the court, which is not the proper manner of presenting such evidence in this Supreme Court, as it has held in a large number of opinions, it is evident that this court has no means at hand of examining such evidence and consequently of determining whether the findings of the judgment court thereon were correct.

Upon this point, therefore, of the capacity of the plaintiff firm as the liquidator of the former firm doing business under the same style and name to exercise the actions and rights derived in favor of said firm from the agreement of November 30, 1893, which is the first question arising in this case, and which has been raised anew in this appeal by counsel for the appellant, Modesto Munítiz, since he has not proven that the District Court of Guayama erred in overruling his demurrer on this point, as we must infer from the mere fact that said court proceeded to decide the other questions relating to the main issue, the judgment of the District Court of Guayama upon this point should be affirmed.

With regard to the other questions raised on this appeal,

while we are also unable to examine the result of the evidence, for the reasons stated above, in view of the fact that the stipulations of the agreement between Sobrinos de Ezquiaga and Modesto Munítiz by the deed of November 30, 1893, are inserted in full in the complaint and in the answer which agree, and as both parties agree as to the contents thereof and differ only as to their construction, this court is of the opinion that the entire question is reduced to a point of law which is decided and determined by an examination of the stipulations contained in said agreement; and, consequently, that this court may without objection enter upon an examination thereof for the purpose of determining whether it has been properly construed or not, and, further, whether or not the judgment of the trial court was a proper one.

Now, then, passing to an examination of the questions raised by Munítiz in the lower court and afterward renewed in his brief in the second instance, we find that the main basis of his entire contention rests upon the allegation that as the agreement entered into between him and Sobrinos de Ezquiaga on the date mentioned must be considered as a contract of partnership on joint account, until such partnership is duly dissolved, Munítiz cannot be required to comply with any of the stipulations thereof.

But it appears to us that this argument of the appellant Munítiz is erroneous.

In order that a joint account may exist it is an indispensable requisite, under article 239 of the Code of Commerce in force, that the special partner or the partner contributing the capital, whatever he may be called, contribute a capital which from the moment it is paid in becomes subject to the favorable or unfavorable results of the transactions of the partnership. This requisite is not present in the case under consideration, because it is very clearly provided in the agreement that Sobrinos de Ezquiaga would open a credit up to the sum of 25,000 *pesos* in favor of Modesto Munítiz, so

that he might attend to the business of his commercial establishment, to which end they would open an account current in their books in his name; Sobrinos de Ezquiaga agreeing to meet all demands of Munítiz for cash and merchandise in order that he might always have a stock on hand in his establishment, and Munítiz on his part agreeing to make such partial payments as he might be able to do at the times most convenient for him in order gradually to liquidate his indebtedness, as also to pay to Sobrinos de Ezquiaga the total balance appearing in their favor on the account current opened between them, when they should deem it in furtherance of their interests, and without any other conditions on the part of Sobrinos de Ezquiaga than to give him notice thereof six months in advance; these conditions are not compatible with the nature of a joint account association, which the defendant, Modesto Munítiz, attributes to the contract, because in a partnership of that character the manager of the partnership is not under the obligation of returning the capital contributed by the special partner, until after the termination of such partnership, and then in accordance with the result of its liquidation; while such conditions accord exactly with the classification of a commercial loan as claimed by Sobrinos de Ezquiaga; nor does the participation which under the contract was reserved to the firm of Sobrinos de Ezquiaga in the profits of the commercial establishment of Munítiz to compensate them for the interest on their money, which Munítiz did not pay, and for the rental of the two houses which the firm had assigned him with the machinery therein for use in connection with his commercial establishment, suffice to deprive the contract of such character, but on the contrary it makes it conform perfectly to a contract of loan, agreeable to the provisions of article 315 of the Code of Commerce, according to which "any agreement made in favor of the creditor shall be considered as interest."

The same may be said with respect to the other clause relating to the examination of and intervention in, the annual

balances of Munítiz, which the contract allowed Sobrinos de Ezquiaga; because apart from the fact that it is very logical for them to have such intervention in order to ascertain the amount of the profits if any, due the firm, it was very just and necessary that, inasmuch as the firm loaned such a large sum to Munítiz without any security, it should reserve the right to take part in the making of the balances in order to judge of the progress of his commercial transactions and to decide, consequently, whether or not it should call upon Munítiz for the payment of the balance in its favor as shown by the account current opened between them.

With regard to the termination of the usufruct of the houses and their return by Munítiz, as the contract does not expressly fix the term of the duration of such usufruct and this point might be intimately connected with the fact of the discontinuance of the commercial establishment of Munítiz, which point has been discussed by the parties in the first and in this second instance, and for the decision of which it would be necessary to enter upon an examination of the evidence heard at the trial, which we are not permitted to do in this case for the reasons hereinbefore stated, we must, therefore, on this point, abide by the findings on the evidence made by the trial court and affirm the judgment appealed from in this respect.

The same is to be said with respect to the other points of the judgment in so far as it denies the rendition of accounts the payment of profits and indemnity for loss and damage, prayed for in the complaint filed by the firm of Sobrinos de Ezquiaga, and upon which points said firm took the appeal from said judgment; because for the decision of these questions, apart from the construction of the stipulations of the contract upon these points which essentially constitute questions of law, it would be necessary to establish whether Munítiz did or did not comply with the obligations imposed upon him by the contract, of communicating his balance to the firm of Sobrinos de Ezquiaga and since what date he ceased to do

so, in order then to determine the date from which the accounts called for by the plaintiff company should be rendered, which are questions of fact, as is the matter relating to indemnity for loss and damage and the amount thereof, which must be fully cleared up by the evidence; and we understand that on these points we are also unable to form a proper judgment and that we must accept that of the trial court, which we must assume to be correct inasmuch as the appellant has not proved that the court has erred in its findings upon the evidence.

For all these reasons, the undersigned justice is of the opinion that the judgment appealed from should be affirmed in every respect, without any special taxation of the costs of this appeal.

*Affirmed.*

Justices Hernández, Figueras and MacLeary concurred.

Mr. Justice Wolf did not take any part in the decision of this case.